UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

AMIR HAMIDI,                                    )
                                               )
    Plaintiff,                             )
                                               )     Case No.  4:16-cv-1091
v.                                             )
                                               )
CITY OF KIRKSVILLE, MISSOURI,                  )
                                               )
And                                            )
                                               )
BRAD SELBY, KIRKSVILLE CODING                  )
AND PLANNING DIRECTOR,                         )
IN HIS INDIVIDUAL AND OFFICIAL                 )
CAPACITY                                       )
                                               )
And                                            )
                                               )
MARI MACOMBER, KIRKSVILLE CITY                 )
MANAGER, IN HER INDIVIDUAL AND                 )
OFFICIAL CAPACITY                              )
                                               )
And                                            )
                                               )
BOB RUSSEL, CITY COUNCIL                       )
REPRESENTATIVE, IN HIS INDIVIDUAL              )
AND OFFICIAL CAPACITY                          )
                                               )
And                                            )
                                               )
MIKE LABETH, CHAIRMAN OF THE                   )
CITY OF KIRKSVILLE PLANNING AND                )
ZONING COMMISSION, IN HIS                      )
INDIVIDUAL AND OFFICIAL CAPACITY               )
                                               )
And                                            )
                                               )
DAVID JACOBS, MEMBER OF THE CITY               )
OF KIRKSVILLE PLANNING AND                     )
ZONING COMMISSION, IN HIS                      )
INDIVIDUAL AND OFFICIAL CAPACITY               )
                                               )
And                                            )
                                               )

CLARK WILSON, MEMBER OF THE CITY )
OF KIRKSVILLE PLANNING AND )
ZONING COMMISSION, IN HIS )
INDIVIDUAL AND OFFICIAL CAPACITY )
                             )
And )
                             )
HERITAGE HOUSE REALTY, )
A MISSOURI LIMITED LIABILITY CORP. )
                             )      JURY TRIAL DEMANDED
    Defendants. )

## COMPLAINT

### I. THE PARTIES

1.     Plaintiff Amir Hamidi is an Iranian-American, practicing Muslim of Persian ancestry. He is a resident of Kirksville, Missouri.

2.     Defendant City of Kirksville ("Kirksville") is a Missouri Third-Class city existing under V.A.M.S. § 77.010.

3.     Defendant Brad Selby is the Kirksville Codes and Planning Director and citizen of Kirksville, Missouri. Kirksville Municipal Code Section 25-2 states, "the job title of codes and planning director shall refer to the same person as may be referred to as codes administrator or code administrator or zoning administrator or building official or floodplain manager or plat officer." Plaintiff sues Defendant Selby in his individual and official capacity.

4.     Defendant Mari Macomber is the Kirksville City Manager and, upon information and belief, is a citizen of Kirksville, Missouri. Plaintiff sues Defendant Macomber in her individual and official capacity.

5.     Defendant Bob Russell was, at all relevant times referred to herein, a City Council Representative for the City of Kirksville and is, upon information and belief, a citizen of Kirksville, Missouri. Plaintiff sues Defendant Russell in his individual and official capacity.

6.      Defendant Mike LaBeth was, at all relevant times referred to herein, Chairman for the City of Kirksville Planning and Zoning Commission and is, upon information and belief, a citizen of Kirksville, Missouri. Plaintiff sues Defendant LaBeth in his individual and official capacity.

7.      Defendant David Jacobs was, at all relevant times referred to herein, a member of the City of Kirksville Planning and Zoning Commission and is, upon information and belief, a citizen of Kirksville, Missouri. Plaintiff sues Defendant Jacobs in his individual and official capacity.

8.      Defendant Clark Wilson was, at all relevant times referred to herein, a member of the City of Kirksville Planning and Zoning Commission and is, upon information and belief, a citizen of Kirksville, Missouri. Plaintiff sues Defendant Wilson in his individual and official capacity.

9.      Defendant Heritage House Realty is a Missouri limited liability corporation and is, upon information and belief, a citizen of Kirksville, Missouri.

10.     For the purposes of this Complaint, the named members of the Kirksville Planning and Zoning Commission (Russell, LaBeth, Jacobs, and Wilson), shall be referred to collectively as "the Commission," or, "Commission."

## II. JURISDICTIONAL PREREQUISITES AND VENUE

11.     This Court has subject matter jurisdiction pursuant to §1331 and §1334(a)(3) in that the claims asserted in this action arise under the Civil Rights Act of 1861 and 1871, 42 U.S.C. § 1983, 42 U.S.C. § 1988, and the First and Fourteenth Amendments to the United States Constitution. Plaintiff Hamidi invokes the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367 to hear and decide his claims under Missouri law.

12.    Venue exists in the Eastern District of Missouri pursuant to 28 U.S.C. §1391(b)(1) and (2) in that the defendants reside within, and the property which is the subject of this action is located within the Eastern District of Missouri.

13.    On or about May 31, 2013, Plaintiff filed a Charge of Discrimination ("CoD 1") with the Missouri Commission on Human Rights, ("MCHR"), detailing the allegations included herein.  A true and correct copy of Plaintiff's Charge of Discrimination is attached hereto and incorporated by reference as Exhibit H.

14.    On or about September 8, 2014, Plaintiff filed a Charge of Discrimination ("CoD 2") with the MCHR, detailing additional allegations of discrimination, some of which occurred after March 12, 2014, included herein. A true and correct copy of Plaintiff's September 8, 2014 Charge of Discrimination is attached hereto and incorporated by reference as Exhibit K.

15.    Defendant City of Kirksville was named in Plaintiff's initial Charge of Discrimination and each subsequent Charge of Discrimination. *See* Exhibits H and K.

16.    Defendant Selby was named in Plaintiff's September 8, 2014 Charge of Discrimination, and implicitly described in CoD 1.

17.    On or about June 2, 2014, the MCHR issued Plaintiff a Notice of Right to Sue regarding CoD 1.  Accordingly, Plaintiff has fully complied with all jurisdictional prerequisites under the Missouri Human Rights Act ("MHRA") to bring this action. A true and correct copy of Plaintiff's Notice of Right to Sue is attached hereto and incorporated by reference as Exhibit I.

18.    Defendants Macomber, LaBeth, Jacobs, Russell, Wison, and Paino were named in Plaintiff's September 8, 2014 CoD 2.

19.    On or about February 24, 2015, the MCHR issued Plaintiff a Notice of Right to Sue regarding CoD 2. Accordingly, Plaintiff has fully complied with all jurisdictional

prerequisites under the MHRA to bring this action. A true and correct copy of Plaintiff's Notice of Right to Sue for his September 8, 2014 Charge of Discrimination is attached hereto and incorporated by reference as Exhibit L.

20.     On or about March 7, 2015, Plaintiff filed a third Charge of Discrimination ("CoD 3") with the MCHR, detailing additional allegations of retaliation specifically against Defendant Mike LaBeth included herein. A true and correct copy of Plaintiff's March 7, 2015 Charge of Discrimination is attached hereto and incorporated by reference as Exhibit N.

21.     On or about April 5, 2016, the MCHR issued Plaintiff a Notice of Right to Sue regarding CoD 3.  Accordingly, Plaintiff has fully complied with all jurisdictional prerequisites under the MHRA to bring this action.  A true and correct copy of Plaintiff's Notice of Right to Sue for his March 7, 2015 Charge of Discrimination is attached hereto and incorporated by reference as Exhibit O.

III. NATURE OF THE ACTION

22.     By this action Plaintiff seeks redress for a history of wrongful conduct by Kirksville, acting under the color of state law and executed by the individual named members of the Planning and Zoning Commission ("Commission"), designed to: (A) deny Plaintiff the same ability as other similarly situated property owners to display a free-standing sign; (B) deny Plaintiff the same ability as other similarly situated property owners to freely display and sell goods outside of his property; (C) continuously harass Plaintiff with no justification and out of retaliation, (C); prevent Plaintiff from using or developing the Hamidi Property (hereinafter defined) for use as a business; (D) depress the market value of the Hamidi Property as a business; and (E) Discriminate against Mr. Hamidi on the basis of his race, color, religion, ethnicity, and national origin.

23.     Acting under color of state law, Defendants have engaged in a course of discriminatory, irrational, and arbitrary conduct which has deprived Plaintiff of equal protection of the law and due process of the law, all in violation of the Fourteenth Amendment to the United States Constitution and actionable under 42 U.S.C. § 1983.

24.     In addition, the Defendants have discriminated against Mr. Hamidi on the basis of his race, color, religion, and national origin in contravention of the Missouri Human Rights Act.

25.     Acting under color of state law, Defendants have engaged in a course of discriminatory, irrational, and arbitrary conduct which has deprived Plaintiff of his rights to speech, in violation of the First Amendment of the United States Constitution and actionable under 42 U.S.C. § 1983.

26.     Defendants have also retaliated against Plaintiff for his participation in a protected remedial administrative procedure.

## IV. GENERAL FACTUAL ALLEGATIONS

27.     Mr. Hamidi is the owner of a used goods resale shop located at 508 N. Marion Street, Kirksville, Missouri 63501.

28.     Hamidi is a practitioner of the Religion of Islam and was born and raised in Iran, and immigrated to the United States in 1976 when he attended the University of Missouri at Columbia.

29.     Hamidi moved to Kirksville, Missouri after he attended college.

30.     For over 20 years, Hamidi has been in the business as well as the hobby of reselling used goods.

31.     In 2010, Hamidi purchased a house and lot located at 1010 Normal Street, Kirksville, Missouri 63501 ("1010 Normal").

32.     Hamidi had purchased 1010 Normal with the plan to initially rent the house out for rental income, but then later convert the house into a resale store and move his business from 508 N. Marion to 1010 Normal, assuming the property could be rezoned.

33.     Under the Kirksville Code of Ordinances ("**Municipal Code**," or "**Code**") the Planning and Coding Director ("**Director**"), also referred to as the "codes administrator," "code administrator," or "zoning administrator," (Code, Appendix A, Art. I, § 25-1, attached as Exhibit A) is an administrative position supporting the planning and zoning commission.

34.     Beginning in 2010, Planning and Coding Director Brad Selby began to wrongfully target Mr. Hamidi and periodically harass Mr. Hamidi, accusing Hamidi of Code infractions, many of which were, by Selby's own admission, not even described by the Kirksville Municipal Code.

35.     Specifically, Selby began to try and prevent Hamidi from holding yard sales on his property.

36.     No municipal code policy or ordinance prevented Hamidi from holding yard sales.

37.     Yet, Selby continued to threaten Hamidi with sanctions for holding yard sales.

38.     Hamidi complained to City Manager Marie Macomber about Selby's harassment.

39.     Macomber responded by initiating a public vote via public utility water bills, allowing the public to vote on whether or not yard sales should be permitted in the city.

40.     As a result of this vote, the public of Kirksville voted **against** regulating or prohibiting yard sales.

41.     City Manager Macomber advised Hamidi that, even though the municipal code was silent on the matter, Hamidi could only hold yard sales on his property twice per month.

7

42.     Sometime between 2011 and 2012, Selby sent Hamidi a letter. Citing the Code, Selby demanded that Hamidi remove snow from his sidewalk, or else face sanctions.

43.     Hamidi confronted Selby about this letter, because Hamidi had spoken with his neighbors, and discovered that none of them had received any letters from the City of Kirksville about snow removal.

44.     Upon being confronted, Selby admitted he did not actually inspect Mr. Hamidi's property, but rather that he had just sent the letter.

45.     During this same period, Selby continually harassed Hamidi's tenants at 1010 Normal, and forbade them from holding yard sales.

46.     In January of 2013, Mr. Hamidi determined that he wished to move his business from the 508 N. Marion Street location to 1010 Normal. To do this, he knew he would have to get the 1010 Normal property rezoned, and he began making inquiries of public officials about how to accomplish this.

47.     In March of 2013, Plaintiff filed his application for rezoning and submitted the required materials to Defendant Selby.

48.     On March 11, 2013, Plaintiff received a letter from Selby who, having visited the property to measure it for purposes of analyzing the property for the rezoning "Point Value System" (described more fully, *infra*), observed some construction materials on the 1010 Normal property and unilaterally declared them to be "rubbish."  The letter (attached as Exhibit B) threatened sanctions unless the "rubbish" was removed.

49.     On the evening of April 10th, 2013, the Kirksville Planning and Zoning Commission held an official hearing at Kirksville City Hall to determine whether or not they

would recommend to the City Council that the 1010 Normal property be rezoned from a designation as Residential to a designation as Low Density Corridor Zone (**"LDCZ"**).

50.     At the hearing at City Hall, the Commission acknowledged that Mr. Hamidi's property at 1010 Normal had enough "points" to warrant consideration for rezoning. See Ex. C Planning and Zoning Commission, Minutes of April 10, 2013.

51.     Under the City of Kirksville Code of Ordinances (**"Code"**), the City Council is responsible for the creation and amendment of Kirksville's Zoning Ordinance (**"Zoning Ordinance"**) and Zoning Map and all legislative decisions concerning the zoning of properties within Kirksville. Under the Code, the City Council (**"Council"**) has the power to change the zoning classification of properties located in Kirksville from one zoning classification to another.

52.     Missouri Law requires cities like Kirksville to establish and appoint a Planning and Zoning Commission to  "recommend the boundaries of the various original districts and appropriate regulations to be enforced therein " V.A.M.S. § 89.070.

53.     Missouri Statute empowers municipal planning and zoning commissions to "make reports and recommendations relating to the plan and development of the municipality to public officials and agencies, public utility companies, civic, educational, professional and other organizations and citizens. It may recommend to the executive or legislative officials of the municipality programs for public improvements and the financing thereof … The commission, its members and employees, in the performance of its functions, may enter upon any land to make examinations and surveys. In general, the commission shall have the power necessary to enable it to perform its functions and promote municipal planning." V.A.M.S. § 89.370.

54.     The Kirksville municipal Planning and Zoning Commission has only as many powers as given to it by operation of State Law. *See* Exhibit D Kirksville Missouri Code of

Ordinances Ch. 2, Art. V., § 2-94. Powers and Duties. ("The powers and duties of the planning and zoning commission shall be as provided in sections 89.300 through 89.490 of the Revised Statutes of Missouri").

55.     Kirksville utilizes at least seventeen (17) different zoning designations. *See* the Code, generally.

56.     There are three special designations of "corridor zones" – "low density," "medium density," and "high density" – which are set apart from all other designations, and for which special zoning rules, *including rezoning rules*, apply, and which do not apply to other zoning designations.

57.     Specifically, Appendix A., Art. 23, § 25-119 of the Kirksville Municipal Code (Attached as Exhibit E), the Kirksville Planning and Zoning Commission utilizes a "Point Value System" ("**PVS**") as an objective, unbiased, non-discretionary metric to determine whether or not to recommend to the City Council that a property be rezoned to a "corridor zone" designation. Properties ***must*** meet the minimum point value required for such zoning designation sought, or else the Commission is not permitted to recommend rezoning. ("Recommendation will not be given … ***unless*** the minimum requisite number of points is accumulated"). Kirksville Municipal Code Appendix A., Art. 23, § 25-119. (Emphasis added).

58.     There is nothing discretionary about the Point Value System.

59.     The Point Value System consists of predetermined point values which correspond to various property attributes. *See* Ex. E, Kirksville Municipal Code Appendix A., Art. 23, § 25-119.

60.     These property attributes are easily determined by either observing obvious physical characteristics (e.g., whether or not the property is on a corner lot), or by taking simple

square-footage measurements. For example, a corner lot, 15,000 square feet or larger, yields 100 points. *See* Ex. E, Kirksville Municipal Code Appendix A., Art. 23, § 25-119.

61.     A LDCZ lot needs a minimum of 250 points in order to be recommended to the City Council for rezoning. *See* Ex. E, Kirksville Municipal Code Appendix A., Art. 23, § 25-119.

62.     The Commission does not have independent **discretion,** separate and apart from the *Point Value System*, to recommend or not recommend to the City Council that a property be rezoned as one of the "corridor zone" designations.

63.     On April 10, 2013, the Commission held a Public Hearing in the Council Chambers at City Hall, located at 201 South Franklin Street in Kirksville, Missouri. *See* Ex. C.

64.     At their April 10, 2013 hearing, Director Selby and the Commission took notice that Mr. Hamidi's property at 1010 Normal **tallied 275 points**. *See* Ex. C, Planning and Zoning Commission Minutes of April 10, 2013.

65.     During the April 10, 2013 hearing, Selby discriminated against Plaintiff by encouraging the Commission to exceed its authority, stating, "the Commission has the option to ask for specific hours of operation to be set, minimal signage, additional fencing, **or any other requirements they determine are needed.**" *See* Ex. C.

66.     The Code does not grant the Commission discretion to unilaterally and arbitrarily invent stipulations.

67.     At the April 10, 2013 hearing, the Commission approved a motion to rezone the 1010 Normal property, subject to arbitrary stipulations which are not anywhere required by the Master Plan or Code, and which are not required of any other business zoned as LDCZ, to wit: "[1] **that any and all sale materials be kept inside buildings**; [2] that the sign for the business be **attached to the building**; [3] that the entrance and parking meet city requirements; [4] if

lighting is used that it be **low wattage** lighting and, [5] if requested by neighbors, a six-foot privacy fence would be built." *See* Ex. C  Planning and Zoning Commission, Minutes of April 10, 2013.

68.     The following day after the Commission meeting, Selby approached Hamidi and gave him an ultimatum: either Hamidi sign-off on the Commission's stipulations, effectively creating a covenant with the City of Kirksville, or else the Commission would not recommend his 1010 Normal property to the City Council for rezoning.

69.     According to the Code, **each corridor zone designation** is defined and regulated with great particularity. These property regulations include regulations on signage, and properties within a given designation are instructed on the number, luminescence, height, location, type, and dimensions of signs.

70.     Within the designation "Low Density Corridor Zone," the Code outlines the privileges and limitations of a low density corridor zoned property, as to signage. The Code permits LDCZ properties to erect or place signage, subject to the following requirements:

> "c.  **All signs can be non-illuminated, indirectly illuminated, or directly illuminated**.
>
> d.  Signs may only apply to the property, lot, or project that the sign rests on.
>
> e.  Billboards are not permitted in any of the zones listed above.
>
> f.  Sign letters or pictures painted on a buildings wall surface that advertise the business is considered to be a wall sign.
>
> g.  Where permitted: Any stand alone business or commercial establishment.

**Type allowed**: Wall signs, projecting signs, **detached signs**, canopy sign, moving message sign.

Number allowed: Two (2) wall signs OR one (1) wall sign and one (1) canopy sign, plus one (1) projecting sign OR one (1) **detached** sign.

Sign size: Wall signs: Each wall sign shall not exceed fifteen (15) percent of the total area of that wall fascia the sign is mounted on, with one hundred (100) square feet being the maximum sign size allowed.

Projecting sign: Two hundred (200) square feet.

**Detached** sign: 1.0 square foot for each linear foot of lot frontage, with two hundred (200) square feet being the maximum.

Canopy sign: A canopy sign is limited to only the vertical flap of the canopy.

Height: Wall signs: Shall not extend above the height of the wall on which they are mounted.

Projecting sign: Shall not extend above the height of the wall on which it is mounted.

**Detached** sign: Twenty-five (25) feet.

Other:

> 1.  A projecting sign shall not extend more than six (6) feet from the face of the building.

> 2.  No sign shall extend over public property other than a projecting sign over the public sidewalk.

> 3.  Any detached sign shall be located no less than five (5) feet from any neighboring property line.

> 4.  In the case of a corner lot (when figuring the sign size by the lot frontage), the sign street side that has the greatest length shall be used for the calculation.

> 5.  In the case of a corner lot with multiple street frontages, an additional wall sign shall be allowed on each side street frontage.

> 6.  A moving message sign would be counted as either a wall sign, projecting sign, or detached sign, depending on where it is located.

*See* Exhibit F, Code at Ch. 6, Art. 11 § 6-164(3)(c-g). (Emphasis added).

71.     The Code refers to free-standing signs as "detached" signs, and the definition of detached is found at Ch. 6, Art. 11, 6-163: "*Detached sign*. Any sign located on the ground or on a structure located on the ground or a pole and not attached to a building. Often called a free-standing, pole, or pedestal sign."

13

72.     The Code also regulates the "exterior display or storage of certain materials…" Specifically, the Code, <u>Section 17-2</u> provides: "It shall be unlawful for any person, firm or corporation, owning, leasing, or being in possession of any real estate, to collect, display, place, store, or allow or suffer to be collected, displayed, placed or stored upon the property, any appliances, furniture, indoor merchandise, or firewood, **_for any period of time in excess of twenty-four (24) hours_** …" See Exhibit G, Code at Ch. 17, § 17-2 (Emphasis added).

73.     Notably, the Code does not provide the planning and zoning commission a roving commission to unilaterally, ad hoc, and arbitrarily dictate the regulations pertaining to individual parcels of land, or to conditionally approve properties to be rezoned.

<u>COUNT I</u>
42 U.S.C. § 1983 – FREEDOM OF SPEECH UNDER THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
(AGAINST ALL DEFENDANTS)

74.     The allegations contained in all paragraphs above are incorporated by reference as if fully set forth.

75.     There is no meaningful difference between Plaintiff and the owners of other privately owned property zoned as LDCZ businesses who requested that their properties be rezoned, whose requests for rezoning were granted, and whose properties have been approved for and developed for commercial use.

76.     There is no meaningful difference between the Hamidi Property and all of the surrounding privately-owned LDCZ properties who are permitted the use of a detached, or free-standing sign under the Code Ch. 6, Art. 11, Section 6-164(3). See Ex. F.

77.     The Hamidi Property, being located on the corner of a major business thoroughfare, Baltimore Street, can be developed in the same fashion as surrounding properties have been developed, as reflected in the Kirksville-Adair Community Plan.

14

78.     The Commission has intentionally and arbitrarily imposed different limitations on Plaintiff's use of the Hamidi Property from every other LDCZ property owner, frustrating his ability to innovate, minimize waste, and increase the value of his property by running a profitable business out of it.

79.     Regardless of whether or not Plaintiff's race, color, religion, ethnicity, and national origin played a role in the Commission's decision to force greater restrictions upon Plaintiff than upon other similarly situated property owners,

80.     Defendant Brad Selby has demonstrated a track record of continually harassing Mr. Hamidi, as have other agents of the City of Kirksville, including City Manager Marie Macomber.

81.     In addition, the Planning and Zoning Commission acted beyond their authority by making arbitrary and irrational stipulations a condition of their recommendation to the City Council.

82.     Plaintiff's 1010 Normal property tallied 275 points on an objective scale (Point Value System) that required only 250 points.

83.     Upon acknowledging this successful point tally at the April 10, 2013 Commission meeting, the Commission's only option was a ministerial duty to recommend to the City Council that the 1010 Normal property be rezoned as LDCZ.

84.     Instead, Defendant LaBeth stated during that April 10 meeting that he received a phone call from Defendant Paino, stating his opposition to Plaintiff's request for rezoning. *See* Ex. C.

15

85.     Subsequently, when Plaintiff's request was brought to a vote, Defendant Jacobs asked Defendant Selby, "if no action was taken, [Plaintiff] could hold yard sales and staff would have no control." *Id.*

86.     Defendant Selby responded that there was no ordinance regulating yard sales. *Id.*

87.     Jacobs then stated, "if the zoning was approved with stipulations, the yard sale appearance could be controlled." *Id.*

88.     Selby stated that that was correct. *Id.*

89.     Jacobs then proposed to approve Plaintiff's request with the following stipulations: "that any and all sale materials be kept inside buildings; that the sign for the business be attached to the building; that the entrance and parking meet city requirements; if lighting is used that it be low wattage lighting and, if requested by neighbors, a six-foot privacy fence would be built. *Id.*

90.     Defendant Russell seconded Defendant Jacobs' motion, and Defendants Wilson, LaBeth, Jacobs, and Russell voted to approve Plaintiff's request so long as he observed the stipulations the Commission imposed upon him. *Id.*

91.     The Defendants' intentional and arbitrarily different treatment of the Plaintiff has denied him equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution.

92.      "Pawsitive Animalworks," located at 901 S. Baltimore Street, is a LDCZ business permitted the use of a detached sign and owned and operated by non-Muslim, non-Iranian, Caucasian individuals.

93.     "Ratliff Reed " automobile dealership located at 1000 S. Baltimore, is a LDCZ business permitted the use of a detached sign and owned and operated by non-Muslim, non-Iranian, Caucasian individuals.

94.     The Law Offices of James M. Garrett located at 716 S. Baltimore is a LDCZ business permitted the use of a detached sign and owned and operated by non-Muslim, non-Iranian, Caucasian individuals.

95.     Defendants have curtailed and placed restrictions upon Plaintiff's speech by refusing to permit him the use of a freestanding sign on his property to advertise his business, and have instead prohibited him from having a freestanding sign.

96.     Other similar businesses are regularly permitted to have a freestanding sign which is not attached to any building, and this permission is even codified in the local municipal code.

97.     Defendants' restrictions on Plaintiff's speech were neither reasonable nor content neutral.

98.     The Planning and Zoning Commission has a track record of wrongful, arbitrary, illegal Actions, which in some instances violate clearly established constitutionally protected rights.

99.     The result of the wrongful Actions described in the paragraph immediately above, is that often individuals and others are treated inequitably, arbitrarily, wrongfully, and in a manner prohibited by the United States Constitution.

100.    The final policymaker of the City of Kirksville has a pattern, practice, or policy of **ratifying** subordinate entity and/or individual actions so as to adopt those Actions.

101.    The final policymaker of the City of Kirksville had and has knowledge of the particular harmful consequences of ratifying such wrongful and unconstitutional Actions, and

those harms are plainly obvious not only to the policymaker but to any average citizen of the United States and would have been plainly obvious to any founder of the United States.

102.    Mr. Hamidi is not a peasant.

103.    The City of Kirksville is not a fiefdom.

104.    Pursuant to the Constitution, neither the United States nor any department or subsidiary thereof, recognize feudal titles – and this is especially true of titles self-seized by local bureaucrats.

105.    Mr. Hamidi has a constitutionally-protected right to ply his trade.

106.    Mr. Hamidi has a constitutionally protected right to communicate the existence of his business to the outside world.

107.    Defendants do not have a substantial state interest in instituting a restraint on Plaintiff's speech.

108.    Defendants' prior restraint is not narrowly tailored.

WHEREFORE, Plaintiff prays this Court on this Count I to:

(A)    Grant judgment in favor of Plaintiff and against the Defendants;

(B)    Declare the proposed stipulations on the zoning of the Hamidi Property to be unconstitutional;

(C)    Require Defendants of the Commission to accept Mr. Hamidi's zoning application without unlawful restrictions.

(D)    Award Plaintiff compensatory damages;

(E)    Award Plaintiff Punitive damages;

(F)    Award Plaintiff all attorney's fees and costs incurred in connection with this action; and

(G)     Grant Plaintiffs such other and further relief as the Court deems appropriate.

COUNT II
COMPLAINT ALLEGING UNLAWFUL DISCRIMINATORY PRACTICE - RETALIATION
PURSUANT TO V.A.M.S. §213.070. AND THE APRIL 5, 2016 RIGHT TO SUE LETTER
ISSUED BY THE MISSOURI COMMISSION ON HUMAN RIGHTS
(AGAINST DEFENDANTS LABETH AND HERITAGE HOUSE REALTY)

109.    Plaintiff restates and incorporates by reference, as if fully set forth herein, all prior

allegations of this Petition.

110.    Defendants have engaged in unlawful discriminatory acts that are prohibited

under the MHRA.

111.    Defendants are "persons" as defined under the MHRA.

112.    Religion and National Origin are protected classes under the MHRA.

113.    Defendants treated Plaintiff inequitably based upon both his religion and national

origin and denied Plaintiff accommodation of the Planning and Zoning Commission and City

Hall as compared to other similarly situated employees who are not Muslim, under and who are

not Iranian.

114.    As contained in this Petition, Plaintiff engaged in activities protected under the

MHRA, including but not limited to, one or more of the following:

(a)     Filing a charge of discrimination with the MCHR and Equal Employment

Opportunity Commission; and/or

(b)     Opposing the stipulations proposed by the Planning and Zoning

Commission and refusing to sign Selby's approval document.

115.    Plaintiff complained to Defendants that he was subjected to discrimination

because of his religion and/or national origin, but Defendants failed to take prompt and effective

remedial action to approve Plaintiff's property for rezoning absent the discriminatory

stipulations.

116.    Plaintiff had also entered into a real estate contract with Defendant LaBeth whereby Plaintiff granted LaBeth the exclusive right to sell Plaintiff's property located at 516 E. Jefferson Street in Kirksville, Missouri.

117.    Defendant LaBeth either owns or has an business relationship with Heritage House Realty.

118.    As a result of engaging in said protected activities, Plaintiff has suffered—and continues to suffer—discrimination by Defendant Mike LaBeth, as alleged in this Petition, including but not limited to one or more of the following:

(a)    That in September of 2014, Defendant LaBeth had the opportunity to sell Plaintiff's property along with the neighboring property, but LaBeth deliberately refused to close the deal in order to retaliate against and harm Plaintiff.

(b)    That, in the days following the failed property sale, Defendant LaBeth informed Plaintiff he would be unable to fulfill the contract and desired to terminate the agreement.

119.    As a direct and proximate result of the foregoing, Plaintiff suffered intentional discrimination—because he filed a charge of discrimination and opposed acts prohibited by V.A.M.S. §213.065, in violation of V.A.M.S. §213.070 --at the hands of Defendants.

120.    On April 5, 2016, Plaintiff was granted a right to sue for this discrimination by the Missouri Commission on Human Rights.  *See* Exhibit O.

121.    Plaintiff's religion and national origin were contributing factors in Defendants' actions and decisions to treat Plaintiff differently and less favorably than other similarly situated property owners, and to retaliate against Plaintiff after he opposed the discriminatory stipulations on his property's rezoning.

20

122.    By failing to take prompt and effective remedial action, Defendants in effect, condoned, ratified, and/or authorized the harassment and discrimination against Plaintiff.

123.    As a direct result of Defendants' discriminatory practices, Plaintiff has sustained and continues to sustain damages, including but not limited to economic loss in the form of lost earnings and benefits, future lost earnings, emotional distress, humiliation, embarrassment, and deprivation of his civil rights.

124.    Defendants' conduct was outrageous because of Defendants' evil motive or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages in an amount that will punish Defendants and deter them and others from like conduct.

125.    Plaintiff is entitled to recover reasonable attorneys' fees and costs from Defendants, as provided in V.A.M.S. §213.111.2.

WHEREFORE, Plaintiff Amir Hamidi respectfully requests that this Court will, after trial by jury, enter judgment against Defendants and in his favor on Count V of this Petition and for a finding that he has been subjected to unlawful discrimination and retaliation prohibited by V.A.M.S. §213.010, *et seq.*; award Plaintiff actual, compensatory, and/or punitive damages in such an amount in excess of $25,000.00 as is deemed fair and reasonable; prejudgment interest, as allowed by law; for reasonable attorneys' fees and costs of suit; for injunctive relief or other appropriate equitable relief; and for such other relief as this Court deems just, proper and justice requires.

Dated:  JULY 5, 2016

21

Respectfully Submitted,

**THE BURNS LAW FIRM, LLC**

By:       /s/ John C. Burns
           John C. Burns, (MO 66462)
           Attorney for Plaintiff
           1717 Park Avenue
           St. Louis, Missouri 63104
           (314) 275-0326 Office & Facsimile
           john@burns-law-firm.com

<u>LIST OF EXHIBITS</u>

p. 1.    Exhibit A: Kirksville, Missouri Code of Ordinances, Appendix A, Art. I, § 25-1 through § 25-2.

p. 3.    Exhibit B: Letter dated March 11, 2013 signed by Brad Selby RE: Rubbish and Garbage located at 1010 E. Normal Street.

p. 9.    Exhibit C: Planning and Zoning Commission Minutes dated April 10, 2013.

p. 15.    Exhibit D: Kirksville, Missouri Code of Ordinances Ch. 2, Art. V., § 2-91 through § 2-95.

p. 17.    Exhibit E: Kirksville, Missouri Code of Ordinances Appendix A., Art. 23, § 25-114 though § 25-122.

p. 24.    Exhibit F: Kirksville, Missouri Code of Ordinances Exhibit F, Code at Ch. 6, Art. 11 § 6-163 through § 6-164.

p. 37.    Exhibit G: Kirksville, Missouri Code of Ordinances Ch. 17, § 17-2.

p. 38.    Exhibit H: Plaintiff's notarized Charge of Discrimination addressed to Missouri Commission on Human Rights signed by Amir Hamidi and dated May 31, 2013.

p. 39.   Exhibit I: Notice of Right to Sue dated June 2, 2014 addressed to Amir Hamidi and Marie Macomber from Missouri Commission on Human Rights regarding Plaintiff's May 31, 2013 Charge of Discrimination.

p. 40.   Exhibit J: Letter dated July 11, 2014 signed by Brad Selby RE: Weeds, Grass, and/or Brush located at 610 E. Jefferson Street.

p. 43.   Exhibit K: Plaintiff's notarized second Charge of Discrimination addressed to Missouri commission on Human Rights signed by Amir Hamidi dated September 8, 2014.

p. 45.   Exhibit L: Notice of Right to Sue regarding Plaintiff's September 8, 2014 Charge of Discrimination emailed to Plaintiff from Missouri Commission on Human Rights dated February 24, 2015.

p. 48   Exhibit M: Plaintiff's Investigative File issued by the Missouri Commission on Human Rights.

Para. 20.   Exhibit N:  Plaintiff's third Charge of Discrimination filed with the Missouri Commission on Human Rights dated March 7, 2015.

Paras. 20.  Exhibit O:  Plaintiff's Notice of Right to Sue regarding Plaintiff's March 7, 2015 Charge of Discrimination, and which is dated April 5, 2016.